(C.D. 4235)

VENAIRE SHADE CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 18, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*Charles P. Deem* of counsel) for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Herbert P. Larsen* and *James Caffentzis,* trial attorneys), for the defendant.

Before WATSON, MALETZ and RE, Judges

RE, Judge: The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Taiwan in 1964. It was invoiced as "vinyl fold-

ing door[s]", and was classified by the customs officials under item 774.60 of the Tariff Schedules of the United States as other articles not specially provided for, of rubber or plastics. Pursuant to item 774.60 the merchandise was assessed with duty at the rate of 17 per centum ad valorem.

The plaintiff has protested the classification and contends that the imported articles are properly classifiable under item 772.35 of the tariff schedules as curtains and like furnishings of rubber or plastics. Pursuant to item 772.35 the articles would be dutiable at the rate of 12.5 per centum ad valorem. Plaintiff's alternative claim that the articles are dutiable under item 727.48 of the tariff schedules, as furniture of plastic, has been abandoned. Simply stated, therefore, the question presented is whether the articles are furnishings like curtains, as contended by plaintiff, or unprovided for articles of plastics, as classified by the customs officials.

For ready reference, the pertinent provisions of the tariff schedules may be set forth as follows:

Classified under:

"Articles not specially provided for, of rubber or plastics:

\*       \*       \*       \*       \*       \*       \*
774.60     Other _____    17% ad val."

Claimed under:

772.35     "Curtains and drapes, including panels
           and valances; napkins, table covers,
           mats, scarves, runners, doilies, center-
           pieces, antimacassars, and furniture
           slipcovers; and like furnishings; all
           the foregoing of rubber or plastics___   12.5% ad. val."

In addition to the testimony of its vice president, the plaintiff introduced into evidence two exhibits. The first exhibit is a sample of the merchandise in issue. As imported, it consists of the vinyl folding door with plastic slides, a lead rail, a wood slat with steel plate attached, a wood slat with pre-drilled holes, two wood slats, a handle, a latch plate and screws. The second exhibit is a sample of a plastic furniture cover that, according to the testimony of plaintiff's witness, is classified by the customs officials under item 772.35 of the tariff schedules. In view of its dissimilarity to the vinyl folding doors in issue, this second exhibit is of no probative value and is of no assistance in determining the proper classification of the controverted merchandise.

Plaintiff's witness testified that there is included with the sample of the merchandise at bar an advertisement entitled "Folding Door". This advertisement, which originated from the plaintiff, is an instruc-

tion sheet which indicates "how to install" the door. The witness stated that he knew the uses of the folding door and those uses are illustrated on the instruction sheet. In answer to the question whether he knew of any other uses, the witness replied:

> "Well, they are used for room dividers as well, which it does not specify as such on the instruction sheets."

On the top of the instruction sheet, in bold red letters, are printed the words "Folding Door". The sheet states, and by a sketch or design illustrates, that the "Folding Door" can be used for kitchens, dining alcoves, play rooms, laundry rooms, and for closets. The section of the sheet entitled "how to install" commences with the words "First check doorway measurements." After the preliminary instructions, which refer to "the top of the door", and "the door jamb", the sheet states in bold print "Your Door is now ready for installation." The instructions clearly and repeatedly refer to "door" and the manner in which the "door" in question is to be assembled and installed.

An examination of the sample, and a reading of the instruction sheet, will leave no doubt that the merchandise at bar is precisely what the invoices say that it is, namely, "vinyl folding door[s]".

The fact that the articles at bar are "doors" has been conclusively established beyond any doubt. The testimony of plaintiff's witness that the folding door could also be used as a room divider, in addition to the uses set forth on the instruction sheet, in no way affects its customs classification. Since the imported door is only three feet in width, it is clear that one door could not be a room divider. In any event it is manifest that the article is primarily and essentially a door. Any other use would be merely fugitive and would not affect its classification for customs purposes. See *Nomura (America) Corp.* v. *United States*, 62 Cust. Ct. 524, C.D. 3820, 299 F. Supp. 535 (1969), *affirmed*, 58 CCPA 82, C.A.D. 1007, 435 F. 2d 1319 (1971); *Astra Trading Corp* v. *United States*, 56 Cust. Ct. 555, C.D. 2703 (1966); *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935).

The plaintiff, nevertheless, asserts that "it is clear that the imported articles referred to as vinyl folding doors have uses, characteristics of physical configeration [sic], and properties which *probably* bring them within the purview of the term 'curtains' as commonly understood, and *certainly* warrant their description as furnishings like curtains." (Italics in plaintiff's brief, p. 5)

Many factors establish conclusively that the vinyl folding doors have been properly advertised and described by plaintiff, prior to this litigation, as vinyl folding doors. The instruction sheet, with its numerous references to the "door" is only one. It can not be doubted that the physical dimensions of the sample are those of a door, and that it is equipped with a handle and latch. Clearly, these are factors that

indicate that the article is a door and not 'a curtain. Furthermore, it would seem equally clear that plaintiff markets the article as a door. Although the manner in which an article is marketed is not, of itself, determinative of its classification, it does, of course, have obvious probative value. See *Montgomery Ward & Co.* v. *United States*, 62 Cust. Ct. 718, C.D. 3853 (1969) ; *Davis Products, Inc., et al.* v. *United States*, 59 Cust. Ct. 226, 230, C.D. 3127 (1967) ; *United States* v. *Ignaz Strauss & Co., Inc.*, 37 CCPA 32, 35, C.A.D. 415 (1949).

Plaintiff relies on the case of *Gitkin Co.* v. *United States*, 54 Cust. Ct. 182, C.D. 2530 (1965), which dealt with mahogany folding doors. Plaintiff asserts that the doors in the *Gitkin Co.* case "were very similar to the plastic folding doors at issue here", and that :

> "For all practical purposes, the uses of those *wood folding doors* were the same as evidenced by the record herein for the instant *vinyl folding doors.*" (Italics in plaintiff's brief, p. 5)

In view of the similarity of the doors, plaintiff relies heavily upon the following statement of the court in the *Gitkin Co.* case :

> "On the record as presented, the article appears to have some characteristics of the ordinary wooden door and some characteristics of curtains or draperies." 54 Cust. Ct. at 186.

In the *Gitkin Co.* case the wooden folding doors had been classified as manufactures of wood whereas the plaintiff there claimed that they were classifiable as doors. That case was decided under the Tariff Act of 1930 and the court noted that the provision for "doors" was an exception carved out of a paragraph which covered "manufactures of wood", and hence was to be strictly construed. The court referred to the "trouble" with plaintiff's evidence, relied on the presumption of correctness, and stated :

> "The record before us is lacking in sufficient factual data to overcome the correctness of that presumption. As stated, no sample of the merchandise was produced, and much of the evidence reflects plaintiff's own peculiar usage of the term 'door.' The dictionary definitions do not show that articles such as those before the court fall within the common meaning of the term 'door.' Nor does the testimony establish that these articles are chiefly used as doors throughout the United States. It may be that they constitute a new type of article, denominated as doors in modern speech, but, in order to prevail, plaintiff has the burden of establishing this positively, and since it has failed to do so, the protest must be overruled." 54 Cust. Ct. at 186–187.

It is true that the court cited lexicographic references for the terms "door", "folding door", "curtains", and "portieres". Surely, however, even assuming a similarity of the merchandise, the plaintiff can derive no comfort from the holding of the court upon the record presented in that case. Moreover, the persuasiveness of the dictum pertaining to "curtains or draperies" loses all force by the holding

of the court in the second *Gitkin Co.* case which was a retrial of the issues presented in the *Gitkin Co.* case cited by the plaintiff in the case at bar. A reading of the second *Gitkin Co.* case will leave no doubt that the opinion of the court in the first case was based upon plaintiff's deficiencies of proof. *Gitkin Co.* v. *United States*, 58 Cust. Ct. 383, C.D. 2997 (1967). Referring to the earlier case the court said:

> "The court sustained the collector's classification of the merchandise under the provision for manufactures of wood rather than that for doors, on the ground that no samples of the merchandise were produced; that, from the illustrations, the articles appeared to have some of the characteristics of ordinary wooden doors and some of the characteristics of curtains or draperies, and that much of the evidence reflected plaintiff's own usage of the term 'door'." 58 Cust. Ct. at 385.

The court proceeded to state that a sample had been introduced at the retrial and described the merchandise. On the record made on the retrial the court concluded that the merchandise, described on the invoices as "Philippine mahogany folding doors", was properly classifiable as "doors" and gave judgment for the plaintiff. The court's determination was based upon its findings that the folding doors were used to "close an entranceway into a room or closet", and that there was "no evidence that they could be used satisfactorily in any other way." 58 Cust. Ct. at 389.

The plaintiff, in the case at bar, is correct in its assertion that there is a similarity between the merchandise in the *Gitkin Co.* case and the merchandise in the case at bar. The mahogany folding doors are expertly described in the second *Gitkin Co.* case, and the similarity to the merchandise in the case at bar and its uses may be regarded as striking. This, however, demonstrates that the vinyl folding doors at bar are *doors*, as claimed by the defendant, and not "curtains" or "*curtain-like* furnishings", as claimed by the plaintiff. (Italics in plaintiff's brief, p. 6)

In the case at bar, an examination of the sample and the testimony will establish beyond all question that the vinyl folding doors are not "like furnishings" similar to curtains. Rather, they perform the function of doors, that is, to close or open an entrance, exit, or opening.

The court has examined a quantity of definitions or descriptions for "door", "revolving door", "folding door", as well as "curtains" and "draperies". Many of these definitions can be found in the cases previously decided by this court. No purpose will be served by setting them forth in this opinion. It is sufficient to say that the various lexicographic definitions of "doors" found in the *Gitkin Co.* cases illustrate clearly that the vinyl folding doors at bar are indeed "doors". They are not *ejusdem generis* with "curtains" and "drapes", and are, therefore, not "like furnishings". See *Joanna Western Mills Company*

v. *United States (Unitron Import Corp., Party-in-Interest)*, 64 Cust. Ct. 218, C.D. 3983, 311 F. Supp. 1328 (1970).

In this case the pertinent exhibit and the testimony affirmatively reveal that the controverted merchandise has been properly classified by the customs officials. There is consequently no need to discuss the presumption of correctness that attaches to the classification of the customs officials, and the dual burden of proof that must be borne by the plaintiff in order to prevail. *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809 (1962); *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004 (1970).

In view of the foregoing, since it is the determination of the court that the merchandise in issue was properly classified, the protest is overruled. Judgment will issue accordingly.