**BLAKLEY CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 98–94.
Court No. 92–10–00670.

United States Court of
International Trade.

July 2, 1998.

Neville, Peterson & Williams (John M. Peterson and George W. Thompson), New York City, for Plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (John J. Mahon); Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, Washington, DC, for Defendant.

## OPINION

CARMAN, Chief Judge.

This matter is before the Court on cross-motions for summary judgment pursuant to U.S. CIT R. 56. In its Motion for Summary Judgment, plaintiff asserts Customs should have classified and liquidated certain artificial stone floor and wall components import-

ed by plaintiff under subheading 6810.19.50, HTSUS, dutiable at 4.9% *ad valorem.* Plaintiff requests this Court order Customs to reliquidate the protested entries under subheading 6810.19.50, HTSUS, and refund all excess duties plus interest as provided by law. Defendant counters Customs properly classified the merchandise at issue under subheading 6810.19.10, HTSUS, dutiable at 21% *ad valorem.*

This Court has jurisdiction to review this matter pursuant to 28 U.S.C. § 1581(a) (1994). For the reasons which follow, the Court denies plaintiff's Motion for Summary Judgment and grants defendant's Cross-Motion for Summary Judgment.

## BACKGROUND

This matter involves the proper classification of artificial stone floor and wall components which plaintiff imported from Italy. The components are manufactured by agglomerating chips and dust of natural stones in a cement binder. The mixture is then cut into squares and the top surface is polished. The sides of the merchandise are not rounded or beveled, but rather retain a rough edge to facilitate its installation as tiling or veneer. The finished product is in the shape of a square, approximately twelve inches per side, with a thickness of either 1.2 or 2 centimeters (cm). The merchandise is intended for use as indoor flooring and in certain instances may be used for wall covering or bordering material.

At issue are four entries imported into the United States between August 31 and November 17, 1989. Upon entry Customs classified the merchandise at issue under subheading 6810.19.10, HTSUS, as "Articles of cement, of concrete or of artificial stone, whether or not reinforced: Tiles, flagstones, bricks and similar articles: Other: Floor and wall tiles", dutiable at 21% *ad valorem.* The four entries at issue were liquidated between January 12 and March 16, 1990, under subheading 6810.19.10, HTSUS. Plaintiff filed protests on March 19 and April 30, 1990, contending the merchandise is classified properly as "slabs" under subheading 6810.19.50, HTSUS, providing for "other" articles of cement, of concrete or of artificial

stone, whether or not reinforced: tiles, flag-stones, bricks and similar articles, dutiable at 4.9% *ad valorem.* Customs denied plaintiff's protests on September 10 and December 30, 1992, respectively. Plaintiff filed two actions contesting Customs denial of its protests, and these two actions were consolidated by an order of the Court issued on April 7, 1997.

### STATUTORY PROVISIONS AT ISSUE [1]

The parties agree the merchandise at issue is classified properly within Heading 6810 of the HTSUS,[2] but dispute the appropriate subheading. Plaintiff contends the merchandise should be classified under heading 6810.19.50, HTSUS, while defendant asserts Customs properly classified the merchandise at issue under heading 6810.19.10, HTSUS. The statute, in relevant part, provides:

| 6810 | Articles of cement, of concrete or of artificial stone, whether or not reinforced: | |
|---|---|---|
| | Tiles, flagstones, bricks and similar articles: | |
| 6810.11.00 | Building blocks and bricks ............. | 4.9% |
| 6810.19 | Other: | |
| 6810.19.10 | Floor and wall tiles ........ | 21% |
| 6810.19.50 | Other .......... | 4.9% |

Additionally, the parties have different positions regarding the applicability of Additional U.S. Notes 1 and 2 to Chapter 68 of the HTSUS (Note 1 and Note 2). The relevant Additional U.S. Notes to Chapter 68 of the HTSUS provide:

1. For the purposes of heading 6802, the term "slabs" embraces flat stone pieces, not over 5.1 cm in thickness, having a facial area of 25.8 cm2 or more, the edges of which have not been beveled, rounded or otherwise processed except such processing as may be needed to facilitate installation as tiling or veneering in building construction.

2. For the purposes of heading 6810, the term "tiles" does not include any article 3.2 cm or more in thickness.

### CONTENTIONS OF THE PARTIES

#### A. *Plaintiff*

Plaintiff raises two principal arguments in support of its contention that the merchandise at issue is classified properly under subheading 6810.19.50, HTSUS. First, plaintiff asserts Additional U.S. Notes 1 and 2 to Chapter 68, HTSUS, establish specific and distinct definitions of the statutory terms "slabs" and "tiles", respectively, making reference to the common and commercial meaning of those terms inappropriate. Plaintiff maintains the merchandise at issue falls only with the specific definition of "slabs" contained in Note 1. According to the plaintiff, the language of Note 1 defines "slab" by reference to "maximum thickness and minimum cubic facial [surface] area dimensions. An article that falls within HTSUS heading 6802 and that meets or exceeds these minimum size requirements and the other restrictions set forth in the Note can only be considered a slab; it cannot be considered a tile." (Br. in Supp. of Pl.'s Mot. for Summ. J. (Pl.'s Br.) at 11.) Plaintiff also argues "[t]here is no question that, for purposes of HTSUS heading 6802, 'slabs', on the one hand, and 'tiles' and other articles, on the other hand, have been defined by Congress in a mutually exclusive manner." (*Id.* at 15.) According to the plaintiff, because "slabs" and "tiles" are defined as mutually exclusive articles and because the merchandise at issue is classified properly as "slabs", the subject merchandise cannot properly be classified as "tiles" under heading 6810.19.10, HTSUS, but rather must be classified under the "other" category in heading 6810.19.50, HTSUS.

Plaintiff's second principal argument contends the definition of "slabs" contained in

---

1. The HTSUS provisions cited by the Court appear in HTSUS (1st ed.1987 and Supp. I—IV).

2. *See* Br. in Supp. of Pl.'s Mot. for Summ. J. (Pl.'s Br.) at 31 ("It is undisputed that the imported building components involved in this action are appropriately classified within HTSUS heading 6810.19, as artificial stone articles."); Def.'s Br. in Supp. of Cross–Mot. For Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. (Def.'s Br.) at 6 ("The parties agree that the merchandise at issue is comprised of artificial stone and is classifiable under heading 6810, HTSUS.").

Note 1 is relevant in determining the proper classification of goods throughout Chapter 68 in its entirety. Plaintiff argues although Note 1 specifically defines the term "slabs" "[f]or the purposes of HTSUS heading 6802", this limitation should be disregarded, and the definition of "slabs" contained in Note 1 "should be applied with respect to all merchandise classified under Chapter 68 of the HTSUS." (*Id.* at 5.)

### B. *Defendant*

Defendant challenges the arguments made by plaintiff, contends Customs properly classified the merchandise at issue under heading 6810.19.10, HTSUS, and asserts this Court should sustain Customs' classification decision. Defendant first argues Note 1, by its own terms, is inapplicable in determining the proper classification of merchandise within heading 6810, HTSUS. The defendant's brief notes "[t]he language [in Note 1] specifically states that the note applies only to heading 6802, HTSUS: 'For the purposes of heading 6802....' " (Def.'s Br. in Supp. of Cross–Mot. For Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. (Def.'s Br.) at 6–7 (emphasis omitted).) Therefore, defendant argues, the description of "slabs" properly classifiable under heading 6802, HTSUS, contained in Note 1 is not relevant to determining the proper classification of the merchandise at issue under heading 6810, HTSUS.

Alternatively, defendant argues even if the description of "slabs" in Note 1 is applicable to heading 6810, HTSUS, and the merchandise at issue falls within the statutory description of "slabs", Customs still properly classified the merchandise as "tiles" under subheading 6810.19.10, HTSUS. Defendant asserts that while "[t]he term 'slab' is not a synonym for the term 'tile,' ... certain types of floor and wall 'tiles' are 'slabs.' The statutory language does not distinguish 'slabs' from 'tiles' as mutually exclusive articles." (*Id.* at 10.) With respect to the merchandise at issue in this matter, defendant contends "even if [they] meet the conditions for 'slabs' set forth in Additional U.S. Note 1 to Chapter 68, HTSUS, ... these 'slabs' ... are 'tiles' properly classifiable as 'tiles' in subheading 6810.19.10, HTSUS." (*Id.*)

Finally, defendant points to an inconsistency resulting from plaintiff's interpretation of the statute. Defendant notes that in contrast to plaintiff's argument that Note 1 requires articles with a surface area greater than 25.8 cm$^2$ be classified as "slabs" throughout the entire HTSUS, another provision within heading 6802, HTSUS, classifies articles with a surface area of 49 cm$^2$ as "[t]iles". Thus, defendant asserts, plaintiff's position yields inconsistent results that this Court's precedent directs it to avoid. (*See* Def.'s Br. at 24 (citing *Intercontinental Fibres, Inc. v. United States*, 64 C.C.P.A. 31, 33, 545 F.2d 744, 746 (1976) (stating "[u]nless it be shown that a literal construction leads to an anomaly or is contrary to Congressional intent, ... the statutory language must govern") (citation omitted); *Cohn & Rosenberger v. United States*, 4 U.S.Cust.App. 378, 383, T.D. 33536 (1913) (noting "in the presence of ambiguity, the fact that inconsistent or absurd results may flow from one construction and not from another will often lead the court to adopt the latter as most likely expressing the legislative intent")).)

### STANDARD OF REVIEW

This case is before the Court on cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S. CIT R. 56(d). "The Court will deny summary judgment if the parties present a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States*, 17 CIT 79, 83, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). When appropriate, summary judgment is a favored procedural device to "secure the just, speedy, and inexpensive determination" of an action. *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed.Cir.1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)) (internal quotations omitted). While the statute provides Cus-

toms decisions are entitled to a presumption of correctness, *see* 28 U.S.C. § 2639(a)(1) (1994), where, as here, a question of law is before the Court on a motion for summary judgment, the statutory presumption of correctness is irrelevant. *See Universal Electronics Inc. v. United States,* 112 F.3d 488, 492 (Fed.Cir.1997) ("[W]e conclude that although the presumption of correctness applies to the ultimate classification decision, ... the presumption carries no force as to questions of law.") (footnote omitted); *Rollerblade, Inc. v. United States,* 112 F.3d 481, 484 (Fed.Cir.1997) ("[N]o deference attaches to Customs' classification decisions either under 28 U.S.C. § 2639 or under *Chevron,* where there are no disputed issues of material fact."); *Goodman Manufacturing, L.P. v. United States,* 69 F.3d 505, 508 (Fed.Cir. 1995) ("Because there was no factual dispute between the parties, the presumption of correctness is not relevant."). The parties agree, and the Court finds, there are no genuine issues of material fact in dispute in this matter. Thus, the statutory presumption of correctness does not apply in this matter.

### DISCUSSION

█ Because plaintiff's second argument is central to the disposition of this matter, the Court will first determine whether the definition of "slabs" in Note 1 applies to all headings in Chapter 68. Plaintiff contends longstanding principles of statutory construction require this Court to apply the descriptive characteristics of "slabs" in Note 1 throughout the entirety of Chapter 68, HTSUS. In support of its argument, plaintiff cites the decisions in *United States v. A.W. Faber, Inc.,* 16 U.S.Cust.App. 467, 470, T.D. 43211 (1929), and *Productol Chemical Co. v. United States,* 74 Cust. Ct. 138, 1975 WL 26988 (1975), arguing those cases support the proposition that the definition of a tariff term applies throughout the Chapter for which it is supplied. (*See* Pl.'s Br. at 26.)

The Court is not persuaded by plaintiff's arguments that the description of the term "slab" contained in Note 1 applies throughout Chapter 68, HTSUS, and is not persuaded that the decisions cited by plaintiff provide authority supporting its argument. Plaintiff correctly notes the decision in *A.W. Faber, Inc.* supports the proposition that distinctions drawn between two products in one part of a statute "'should be carried into other parts of the act unless a legislative intent to the contrary is evidenced.'" (Pl.'s Br. at 26 (quoting *A.W. Faber, Inc.,* 16 Ct. Cust. at 470).) In making this argument, however, plaintiff fails to give sufficient weight to the caveat that distinctions drawn between two products should not be applied throughout the statute where a contrary legislative intent is apparent. The same shortcoming is present with respect to plaintiff's citation of *Productol Chemical Co.* for the proposition that a word or phrase is presumed to have the same meaning throughout the statute, unless a contrary intent is clearly indicated.

The fundamental difference between this matter and the cases cited by the plaintiff is that Congress did specifically express its intent to limit the applicability of Notes 1 and 2. Congress included language in Notes 1 and 2 which makes clear the descriptions they contain apply only to certain headings within the HTSUS. Note 1 clearly states its description of "slabs" applies only with respect to heading 6802, HTSUS, while Note 2 makes clear its description of "tiles" applies only with respect to heading 6810, HTSUS. In order for the Court to accept plaintiff's contention that the description of "slabs" in Note 1 applies throughout Chapter 68, HTSUS, the Court would be required to disregard language which clearly establishes boundaries on the applicability of the descriptions of "slabs" in Note 1.

█ Congress' intent to limit the descriptions contained in Notes 1 and 2 could scarcely be made more clear. As noted above, introductory clauses to both Notes 1 and 2 clearly limit the scope of their application to headings 6802 and 6810, respectively. The Court is mindful of plaintiff's statement that in interpreting a statute "the entire context of the statute must be considered and every effort made to give effect to every word therein; Congress is presumed not to have used superfluous words in a statute." (Pl.'s Br. at 14.) Based on plaintiff's ac-

knowledgment of this concept, the Court has difficulty understanding how plaintiff can assert "there is no reason-and certainly no clearly expressed Congressional intent-why th[e] definition[ ] [in Note 1] should not apply with equal force to HTSUS heading 6810." (*Id.* at 27.) The Court finds the language utilized in Notes 1 and 2 clearly and decisively expresses a Congressional intent the descriptions contained therein be applied only with respect to headings 6802 and 6810, respectively.

Even if the Court were to find Note 1 applies throughout Chapter 68, HTSUS, as plaintiff contends, the most that would be established is that the merchandise at issue falls within both the description of "slabs" contained in Note 1 and the description of "tiles" contained in Note 2. The merchandise at issue falls within the description of "slabs" in Note 1 because it is less than 5.1 cm thick, has a surface area larger than 25.8 cm$^2$, and meets the finishing requirements specified. Plaintiff's argument, however, fails to appreciate the merchandise at issue also falls within the description of "tiles" contained in Note 2. The merchandise at issue is less than 3.1 cm thick, and thus satisfies the only characteristic of "tiles" specified by Note 2.[3]

■ Finally, plaintiff argues the descriptions of "slabs" and "tiles" in Notes 1 and 2, respectively, constitute "statutory definitions" making reference to the common and commercial meaning of "slabs" and "tiles" improper. While Notes 1 and 2 certainly establish boundaries on the dimensional measurements of "slabs" and "tiles" properly classifiable within headings 6802 and 6810, respectively, the Court rejects plaintiff's contention that these "statutory definitions" render the common and commercial meanings irrelevant. The Court finds Notes 1 and 2 do not provide "definitions" of the terms "slabs" and "tiles", but rather provide a description

of measurements and the manner in which the underlying articles are finished (*e.g.,* with edges that are not rounded or beveled). The Court agrees with the defendant's characterization that "the Additional U.S. Notes to Chapter 68, HTSUS, simply set a minimum facial area for 'slabs' and a maximum thickness for 'tiles' for purposes of specified parts of the tariff schedule." (Def.'s Br. at 13.) The Court finds the common and commercial meaning is relevant to clarify the merchandise falling within the various headings, and the dimensional measurements in the Notes set boundaries on the sizes which can be classified within the various headings of Chapter 68. The definitions of "slabs" and "tiles" in the Notes only reference dimensional measurements of the merchandise and make no effort to further describe the merchandise or define the terms used in the statute.

■ Having rejected plaintiff's contention the subject merchandise is classified properly as "slabs" based on the application of Note 1 to merchandise which the parties agree is classifiable under heading 6810, HTSUS, and that Notes 1 and 2 do not constitute "statutory definitions" of the terms "slabs" and "tiles", the Court must determine whether Customs properly classified the merchandise at issue under heading 6810.19.10, HTSUS. General Rule of Interpretation 6 provides "[f]or legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes." It is well-settled that "[t]he ultimate issue as to whether particular merchandise has been classified under an appropriate tariff provision necessarily depends on the meaning of the terms of that provision." *Lynteq, Inc. v. United States,* 10 Fed.Cir. (T) 112, 115, 976 F.2d 693, 696 (1992). To determine the proper meaning of these tariff terms, the Court will construe the terms " 'in

---

**3.** While plaintiff argues reading Notes 1 and 2 *in pari materia* yields the conclusion that an article classifiable in Chapter 68, HTSUS, which is less than 5.1 cm thick and with a surface area greater than 25.8 cm² can be classified only as a "slab", the Court does not accept this reading. Heading 6802.10.00, providing for "tiles" with a maximum surface area of 49 cm², is a clear example

that articles may be classified as "tiles" even though their surface area exceeds the 25.8 cm² minimum surface area for "slabs" classifiable under heading 6802, HTSUS, as established in Note 1. As will be discussed below, the Court finds the fundamental distinguishing characteristic between "slabs" and "tiles" is thickness, not surface area, as plaintiff contends.

accordance with their common and popular meaning, in the absence of contrary legislative intent.'" *Marubeni Am. Corp. v. United States,* 35 F.3d 530, 534 (1994) (quoting *E.M. Chems. v. United States,* 9 Fed.Cir. (T) 33, 37, 920 F.2d 910, 913 (1990) (citations omitted)). "'To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources.'" *Id.* (quoting *Brookside Veneers, Ltd. v. United States,* 6 Fed.Cir. (T) 121, 125, 847 F.2d 786, 789 (1988) (citation omitted)).

The term "slab" is defined as "a comparatively thick plate or slice of something (as of metal, stone, wood, or food)." *Webster's Third New International Dictionary* 2136 (1986). The same source defines "tile" as "a flat or curved piece of fired clay, stone, concrete, or other material used esp. for roofs, floors, or walls and often for such work of an ornamental nature." *Id.* at 2393. An alternate definition provides tiles are "a thin piece of resilient material (as an asphalt composition, cork, linoleum, or rubber) used esp. for covering floors or walls." *Id.*

The definitions of "slabs" and "tiles" suggest a fundamental difference between the two articles of thickness. This is reflected in comparing the maximum thickness for "slabs" and "tiles" provided for in Notes 1 and 2, respectively. Note 1 provides articles classifiable as "slabs" under heading 6802, HTSUS, may not be thicker than 5.1 cm, while Note 2 provides articles properly classifiable as "tiles" under heading 6810, HTSUS, may not be thicker than 3.1 cm. The Court finds the relative thickness of the merchandise at issue, rather than its surface area, is the fundamental characteristic relevant to its classification. Based on this distinction, and the fact that the merchandise at issue is significantly thinner than the maximum thickness for "tiles" established in Note 2, the Court finds Customs properly classified the merchandise at issue as "tiles" under heading 6810.19.10, HTSUS, dutiable at 21% *ad valorem.*

Finally, the Court notes the entry papers and product brochures concerning the merchandise at issue use the term "tile" in describing the product. While the Court acknowledges this description is not dispositive in determining the merchandise's proper classification,[4] such a description does provide further support for this Court's determination that Customs properly classified the merchandise at issue under subheading 6810.19.10, HTSUS, as "Articles of cement, of concrete or of artificial stone, whether or not reinforced: Tiles, flagstones, bricks and similar articles: Other: Floor and wall tiles".

CONCLUSION

For the reasons stated above, this Court finds the merchandise at issue is classified properly under subheading 6810.19.10, HTSUS, as "Articles of cement, of concrete or of artificial stone, whether or not reinforced: Tiles, flagstones, bricks and similar articles: Other: Floor and wall tiles", dutiable at 21% *ad valorem.* Accordingly, plaintiff's Motion for Summary Judgment is denied and defendant's Cross–Motion for Summary Judgment is granted.

**JUDGMENT ORDER**

This matter having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

---

**4.** *See, e.g., North American Processing Co. v. United States,* Ct. No. 93–11–00769, slip op. 98–13 at 6, 1998 WL 72811 (CIT Feb. 19, 1998) ("While they are not controlling in classification determinations, invoice and packaging descriptions of merchandise are evidence which can aid the Court in reaching the proper classification."); *Schott Optical Glass, Inc. v. United States,* 11 CIT 899, 910, 678 F.Supp. 882, 892 ("The record is replete with evidence that demonstrates [the merchandise at issue] has been commonly and popularly known, advertised, described, purchased, and sold as optical glass."), *aff'd,* 862 F.2d 866 (Fed.Cir.1988); *Lukas American, Inc. v. United States,* 7 CIT 280, 282 (1984) ("While not controlling, it is well established that the marketing of an imported article is relevant in determining the proper classification of that item for tariff purposes."); *Venaire Shade Corp. v. United States,* 66 Cust. Ct. 469, 472, C.D. 4235 (1971) ("Although the manner in which an article is marketed is not, of itself, determinative of its classification, it does, of course, have obvious probative value.").

**ORDERED** that plaintiff's Motion for Summary Judgment is denied; and it is further

**ORDERED** that defendant's Cross–Motion for Summary Judgment is granted.