Slip Op. 01 - 147

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| | : | |
| AVENUES IN LEATHER, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| THE UNITED STATES, | : | Court No. 99-09-00603 |
| | : | |
| Defendant. | : | |
| | : | |

[On classification of "Presentation Calcu-Folios," judgment for defendant.]

Decided: December 13, 2001

*Fitch, King and Caffentzis*, New York, New York (*James Caffentzis*), for the plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *Joseph I. Liebman*, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, (*Amy M. Rubin*); *Yelena Slepak*, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of counsel, for the defendant.

## **OPINION**

Plaintiff Avenues in Leather, Inc. ("Avenues") invokes this Court's jurisdiction under 28 U.S.C. § 1581(a) to determine the correct classification of style numbers 3532 and 3533 "Presentation Calcu-Folios" entered at the Port of New York in 1997. The defendant United States Customs Service ("Customs") moves for summary judgment, arguing that the merchandise at bar is substantially identical to that considered in *Avenues in Leather, Inc. v. United States*, 22 CIT 404, 11 F. Supp.2d 719 (1998) ("*Avenues I*"), *aff'd* 178 F.3d 1241 (Fed. Cir. 1999) ("*Avenues II*"). For the reasons set forth herein judgment is awarded in favor of Customs.

**I**

The imported articles are : (1) zippered on three sides; (2) measure 13 1/2 inches in height by 11 1/2 inches in width by 1 1/2 inches in depth when closed; (3) have one exterior open flat pocket; (4) have a single padded carrying handle fitted to the exterior spine; (5) are constructed of paperboard covered plastic foam and a vinyl/plastic exterior and interior; (6) contain a three-ring metal binder in the interior that is permanently affixed to the spine; (7) have a horizontal sleeve in the interior right side, into which has been placed a cardboard backed 3-hole lined pad of paper measuring 8 1/2 inches by 11 inches; and (8) contain in the interior left side an open flap pocket on top of which are a zippered pocket, one large slot of approximately 11 3/4 inches in length by 4 1/4 inches in height, two smaller slots sized to hold computer disks, two loops for writing instruments, and a permanently attached calculator measuring 3 inches in width by 5 1/2 inches in height. *See* Def.'s Statement of Material Facts As To Which There Are no Genuine Issues To Be Tried ¶ 4 ("Def.'s Statement").  Counsel for Customs state they have not reviewed a sample of style 3532 or the packaging or tags with which the merchandise was imported, however counsel argues that according to the complaint in this action, all of the merchandise in issue possess the same features. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") Exhibit A (sample style 3533).

The entries were classified by Customs under subheading 4202.12.20, Harmonized Tariff Schedules of the United States ("HTSUS"), which provides as follows:

> 4202:  Trunks suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instruments cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder

cases, cutlery cases and similar containers, of leather or of composition material, of sheeting of plastics, of textile materials, of vulcanized fiber or of paper board, or wholly or mainly covered with such materials or with paper:

Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels and similar containers

4202.12                         With outer surface of plastics or of textile materials

4202.12.20                        With outer surface plastics. . . . . . . . . . 20%

Avenues claims that its merchandise is properly classifiable as binders under subheading 4820.30.00, HTSUS, which provides as follows:

4820:          Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (looseleaf and other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationary, of paper or paperboard, albums for samples or for collections, and book covers (including cover boards and book jackets) of paper or paperboard):

4820.30.00                        binders (other than book covers), folders and file covers . . . . . . . . . . . . . . . . . . . . . 4.2%[1]

*See* Pl.'s Mem. in Opp'n to Def.'s Mot for Summ. J. ("Pl.'s Mem").

Customs argues summary adjudication of this matter is appropriate because there are no factual disputes regarding the construction, features, or general purpose of the subject imported articles, and only legal issues remain, *i.e.* determining the scope of any potentially relevant tariff

---

[1] In *Avenues I*, the claim was that imported merchandise was classifiable under 4820.10.20, HTSUS, which provides for "Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles: . . . Diaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles . . . 3.2%."

provisions. Except for the calculator, Customs notes that the dimensions and features of the Presentation Calcu-Folios at bar are "very similar" to three of the four styles of importations previously considered in *Avenues I. See* 22 CIT at 406-407, 11 F. Supp.2d at 722.

Rule 1 of the General Rules of Interpretation, HTSUS ("GRI"), states that "for legal purposes, classification shall be determined according to the terms of the headings and any relevant section or chapter notes" and therefore Customs argues that before subheadings may be examined, GRI 1 requires an initial determination on which heading encompasses the article. In heading 4820 the drafters used the general terms "similar articles" and "other articles of stationary" to group the various exemplars into three distinct categories: (1) "articles" such as registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, and diaries; (2) "articles of stationary" such as exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets; and (3) albums and book covers. Since the claimed classification is for "binders," Customs argues Avenues is necessarily contending that the Presentation Calcu-Folios are "articles of stationary." Customs argues that the "many other features" of the imported articles "do not immediately suggest a connection to writing" and therefore when viewed in their entirety do not constitute articles of stationary. Def.'s Mem at 16. By contrast, classification under heading 4202 was correct, Customs argues, because heading 4202 encompasses attache or brief cases and "similar containers" designed to carry business or other documents together with additional items such as pens, compact or floppy discs, an address book, and so forth. Therefore, Customs argues headnote 4202 best describes the articles at bar. Furthermore, Customs notes that Note 1(h) to Chapter 48, HTSUS, states: "this chapter does not cover: Articles of heading

4202 (for example travel goods)." According to Customs, neither Chapter 42 nor Heading 4202 elucidates similar exclusions for articles described under Chapter 48 so therefore Avenues' claimed classification must fail because the doctrine of relative specificity is inapplicable. Customs lastly argues that even if the Court determines that heading 4202 does not encompass the merchandise at issue, this matter may be resolved simply by determining the meaning and scope of the term "binders" in the claimed provision, a matter of legal construction, and trial is therefore unnecessary.

Avenues opposes summary judgment on the ground that it is conclusory to assume the imported merchandise is "very similar" to that considered in *Avenues I*. Avenues argues it can prove at trial that the primary purpose of the subject merchandise is different from the "containers" described by heading 4202, and in support of its opposition Avenues submits the affidavit of Otniel Shor, the designer of the imported Presentation Calcu-Folios and also of "containers" of the type covered by heading 4202. Mr. Shor avers the following:

* * *

6. Each of the subject articles is designed as a DIRECT office assistant. That is to say, the user utilizes the feature in the article by indirect interaction with such features in the article – for example, by writing on the note-pad, by using the built-in calculator and by inserting papers in the spring loaded 3-ring binder.

7. The subject articles are not designed to hold small books, newspapers or similar items. Placing such items in Zippered Ring Binder/Pad Holders would be completely out of the norm and would diminish the articles intended utility and purpose. It would certainly cause strain on their structure and eventually ruin and render them useless.

8. Avenues . . . distributes the imported subject articles to national office supply retailers such as Staples, OfficeMax and Office Depot.

9. Avenues . . . also imports and distributes carrying cases that belong to the industry product class known as Attache Cases, Briefcases, and similar cases (hereinafter "Cases") all of which I also design.

10. Cases are designed with a distinctive holding capacity to carry and transport miscellaneous personal and office paraphernalia. The holding capacity of Cases is made in such a way to also permit the carrying of Executive Accessories such as the Zippered Ring Binder/Pad Holders in issue within them. Therefore, the designated use of Cases is fundamentally different from the articles in issue.

11. In my 25 years of experience in this industry, I have yet to come across a Case that has *any* of the following: a bound spring loaded 3-ring binder, a built-in calculator, or a slip-in note pad.

12. The inclusion of a bound 3-ring binder, a built-in calculator, or a slip-in note-pad in Cases would be inconsistent with the purpose and design of Cases, which is to organize, store, protect or carry various and sundry articles, for business and/or travel.

13. Cases are not dedicated to the organization and carrying of business and personal papers such as loose-leaf papers

14. Avenues . . . distributes Cases to national office supply retailers such as Staples, OfficeMax and Office Depot.

15. In such retail stores, Cases are sold in an area specifically designated only for Cases. Likewise, the articles in issue are merchandised in a separate area in the stores specifically designated for such articles.

16. Cases do not compete with the articles in issue

17. I am familiar with the articles provided for in Heading 4202 of the [HTSUS] and am prepared to testify that the essential character or purpose of the articles in issue is different from that of the articles described therein.

* * *

Pl.'s Mem. (attachment).

Avenues argues that the use of the Presentation Calcu-Folios is analogous to the use of the loose-leaf day planners considered in *Mead Corporation v. United States*, 185 F.3d 1304 (Fed. Cir. 1999) *vacated and remanded*, 533 U.S. 218 (2001), which the Court of Appeals for the Federal Circuit ("CAFC") opined were neither "diaries" nor "bound" within the meaning of the tariff item 4820.10.20.[2]  Pl.'s Resp. at 3-4.  Avenues contends it should be afforded the opportunity to present evidence to establish that Presentation Calcu-Folios, like the "containers" in *Mead*, are not "similar to" the containers of Heading 4202.  Avenues submits that if the Court were to accept this proposition, Note 1(h) to Chapter 48 would not preclude consideration of its claim, and it further contends that to the extent the *Avenues* courts relied on the "more than" doctrine, *JVC Company of America, Division of US JVC Corp. v. United States*, 234 F.3d 1348 (Fed. Cir. 2000) now controls.

Customs replies that Avenues offers no proof that the merchandise at bar is not very similar to the merchandise at issue in *Avenues I*, the government's statement of undisputed facts here, and Avenues admission as to each element thereof.  As additional support, attached to Customs' reply are certain portions of Otniel Shor's deposition relating to *Avenues I* and certain other declarations. *See* Def.'s Statement; Pl.'s Resp. to Def's Statement.  Avenues moves to strike the attachments, arguing that Shor's prior deposition would only be admissible for impeachment and that the other declarations do not relate to the merchandise at bar.

---

[2]  *Mead Corporation v. United States*, 22 CIT 707, 17 F.Supp.2d 1004 (1998), affirmed Customs' classification of certain imported day planners as bound diaries under 4820.10.40.  The CAFC found the day planners properly classifiable under 4820.10.40 as other diaries and similar articles.  The Supreme Court granted certiorari to the CAFC's reversal of that decision, and vacated and remanded to the CAFC, albeit in order to afford the CAFC the opportunity to apply *Skidmore* deference to the specific ruling letter at issue.  Briefing has just begun on that matter on remand, but vacatur effects judgments, *see* 28 U.S.C. § 2106, therefore the appellate rationale is of some moment.

**II**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." CIT Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). All reasonable inferences are to be resolved against the party whose motion is under consideration. *McKay v. United States,* 199 F.3d 1376, 1380 (Fed.Cir.1999).

The motion to strike the attachments to Customs' reply is denied since they were submitted as part of the public record of *Avenues I*. The Court also finds the merchandise at bar substantially the same as that considered therein. Avenues is not estopped from presenting evidence and relitigating a prior decision upholding the identical classification of similar merchandise, *United States v. Stone & Downer*, 274 U.S. 225 (1927), but judgment for the government is required unless it can be shown that *Avenues I* was "clearly erroneous." *Schott Optical Glass Inc. v. United States*, 750 F.2d 62 (Fed. Cir. 1984). Examining Defendant's Exhibit A and all relevant papers in a light most favorable to the non-moving party, the Court concludes that Avenues has not overcome its burden. The factual observation in *Mead* to which counsel directs attention does not compel the conclusion that the imported articles are not "similar to" the broad *eo nomine* heading of 4202, and Avenues does not offer additional evidence beyond the assertion that Mr. Shor's testimony would offer "facts[ ] additional to or different than those found by the [CIT] in *Avenues I*." Pl.'s Mem at 2. If the extent of Avenues' case-in-chief is testimony that Presentation Calcu-Folios are designed for a specific use, are capable of "containing" just so much, and are sold in distinct areas of retail stores apart from "Cases" (as defined by Avenues), that is an insufficient basis for concluding that *Avenues I* does not control, was clearly erroneous, or that *JVC*, *supra*, overturns.

**CONCLUSION**

For the foregoing reasons, the Court concludes that entry of summary judgment in favor of

the government is appropriate.  Judgment will enter accordingly.


_____
R. KENTON MUSGRAVE, JUDGE


Dated: December 13, 2001
        New York, New York